UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| & | ) | |
| | ) | |
| STATE OF MAINE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Case No. |
| | ) | |
| NOBLE HOME HEALTH CARE, INC., | ) | |
| and MOHAMED A. HASSAN, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COME Plaintiffs, the United States of America (the "United States"), on behalf of its agency the U.S. Department of Health and Human Services ("HHS"), and the State of Maine ("Maine"), on behalf of its agency the Maine Department of Health and Human Services ("Maine DHHS") (together, "Plaintiffs"), and hereby file the instant Complaint pursuant to 31 U.S.C. § 3730(a) and 22 M.R.S.A. § 15, and in support thereof allege as follows:

### I.  Summary of Action

1.      This is a civil action against Noble Home Health Care, Inc. ("NHHC") and its founder, sole owner, and administrator, Mohamed A. Hassan ("Hassan") (together, "Defendants"), for violations of the federal False Claims Act and analogous Maine state law. From May through September 2016, Defendants knowingly submitted or caused to be submitted to MaineCare false claims for reimbursement for Targeted Case Management Services provided to children with mental health diagnoses, despite the fact that NHHC did not hold the necessary mental health licensure to bill for such services.  Proper mental health licensure was a material

1

prerequisite for MaineCare's reimbursement decision, as such information had a natural tendency to influence, or be capable of influencing, its payment determination.

2.     Defendants thereafter knowingly retained the overpayments of all MaineCare funds received as a result of their false claims.  After receiving such overpayments, Defendants were informed by Maine DHHS officials that such unlawful claims for services needed to be reversed and repaid.  In September 2016, Hassan informed an employee of the Division of Licensing and Regulatory Services – Behavioral Health of Maine DHHS that all funds billed for services provided to children with mental health diagnoses would be repaid, thereby expressly acknowledging Defendants' repayment obligation.  To date, however, Defendants continue to improperly retain and avoid their obligations to return the overpayments to MaineCare. Defendants are thus subject to liability for these "reverse false claims."

3.     The instant action accordingly seeks treble damages and civil penalties arising from all false claims submitted by Defendants to, reimbursed from, and improperly retained from MaineCare pursuant to the federal False Claims Act, *see* 31 U.S.C. § 3729, *et seq.*, as well as Maine law, *see* 22 M.R.S.A. § 15.  An accounting and recovery of amounts by which Defendants were unjustly enriched is further demanded.

## II.  Jurisdiction and Venue

4.     This Court has jurisdiction over the claims brought by the United States under the federal False Claims Act pursuant to 28 U.S.C. §§ 1331, 1345 and 31 U.S.C. § 3732(a).

5.     This Court further has jurisdiction over the claims brought by the State of Maine pursuant to 28 U.S.C. §§ 1332, 1367 and 31 U.S.C. § 3732(b).

6.      This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) both because Defendants transacted business in this District and because their acts proscribed under 31 U.S.C. § 3729 occurred in this District.

7.      Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b), 1391(c), because Defendants transacted business in this District and/or because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

### III.  Parties

8.      Plaintiff the United States is acting on behalf of its federal agency, HHS.

9.      Plaintiff the State of Maine is acting on behalf of its state agency, Maine DHHS.

10.     Defendant NHHC was incorporated on December 30, 2014, as a Maine for-profit business corporation with a primary business address of 94 Auburn Street, Suite 205, Portland, Maine, 04103.  NHHC has since been administratively dissolved.

11.     Defendant Hassan is a resident of Cumberland County, Maine.

12.     Public records of the Maine Department of the Secretary of State, Bureau of Corporations, Elections and Commissions, list Hassan as the Clerk/Registered Agent of NHHC at the same address as NHHC's business address.

13.     Business records of Bank of America, N.A., list Hassan as the contact person and authorized individual responsible for NHHC's business checking and savings accounts.

14.     During the timeframe relevant to this action, Hassan exercised complete ownership of and control over NHHC, oversaw its operations, held hiring and payment authority over all employees of NHHC, was responsible for the contracts of NHHC, and dictated where,

when, and how the work of NHHC proceeded and was performed.  Hassan was further

responsible for the control and/or management of NHHC's funds and finances.

## IV.  Applicable Law & Regulations

**A.    Targeted Case Management Services Provided under the MaineCare Program**

15.    MaineCare is a federal health care benefit program paid by Maine state funds, as

well as by grants made to states by HHS, by and through its sub-agency the Centers for Medicare

& Medicaid Services ("CMS").

16.    The portion of MaineCare paid by federal funds is known as the Federal Financial

Participation, and differs by state and by fiscal year based on each state's *per capita* income.

This percentage contribution is known as the Federal Medical Assistance Percentage.

17.    For the timeframe relevant here, federal fiscal year 2016, the Federal Medical

Assistance Percentage provided to the State of Maine was 62.67 percent, with the State of Maine

funding the remaining 37.33 percent.

18.    Maine DHHS administers the MaineCare program for the State of Maine on

behalf of CMS.

19.    MaineCare's regulations, policies, and guidelines require MaineCare-

reimbursable services to be billed by providers using appropriate billing codes and

methodologies.

20.    Providers must also certify their compliance with applicable MaineCare laws and

regulations as a prerequisite to receiving MaineCare funds for covered services.

21.    During the timeframe at issue, as a prerequisite to reimbursement for covered

services, the operative MaineCare Benefits Manual (the "Manual" or "MBM") provided

4

additional material rules and requirements applicable to all MaineCare providers submitting claims.

22.     Specific to this case, Section 13 of the Manual established certain rules and requirements concerning the provision of reimbursable "Targeted Case Management Services" to children.

23.     Such case management services

are those covered services provided by a social services or health professional, or other qualified staff, to identify the medical, social, educational and other needs (including housing and transportation) of the eligible member, identify the services necessary to meet those needs, and facilitate access to those services. Case management consists of intake/assessment, plan of care development, coordination/advocacy, monitoring, and evaluation.

*See* MBM § 13.01-5.

24.     Children who are MaineCare members may receive Targeted Case Management Services if they fall within an eligible "targeted population group," such as by having a "Behavioral Health Disorder" evidenced by a mental health diagnosis, "Developmental Disabilities," or "Chronic Medical Conditions." *Id.* §§ 13.03-2.A.1.a-c, 13.03-3.A-C.

25.     However, such Targeted Case Management Services may only be provided by agencies and providers meeting all required qualifying criteria. *Id.* § 13.07-2.  One such requirement is that Targeted Case Management agencies must operate in a manner consistent with applicable Maine state laws, regulations, and procedures. *Id.* § 13.07-2.A.3.

26.     Maine state law, regulation, and procedure requires that Targeted Case Management programs servicing MaineCare members with mental health diagnoses must have a Mental Health Agency License in order to provide mental health services.  34-B M.R.S.A. §§ 1203-A, 3601(1-A), (2); *see also* MBM §§ 1.03-8.A, 13.07-2.A.5.D (enrolled MaineCare providers must maintain current licenses as a requirement of their participation in MaineCare).

5

27.     The Division of Licensing and Regulatory Services – Behavioral Health of Maine

DHHS is responsible for conducting licensing reviews of mental health services in the State of

Maine to assure that agencies have an adequate capacity to provide such services.  *See* Maine

DHHS Rule 14-193, Ch. 6 ("Mental Health Licensing Regulations").  Only where the Division

of Licensing and Regulatory Services – Behavioral Health determines that an agency complies

with certain core standards of agency and clinical management will a "Mental Health Agency

License" be issued.  *Id.*

28.     Targeted Case Management thus cannot be provided to or reimbursed for

MaineCare members with a mental health diagnosis in the absence of a current Maine state

Mental Health Agency License.

29.     In the event these requirements are not met, MaineCare providers are prohibited

from claiming costs for non-covered and non-chargeable services, *see* MBM §§ 1.03-8.J, 1.06-1,

as MaineCare is not authorized to reimburse for such non-covered services, *see id.* § 1.06-4.A-B.

30.     MaineCare providers are further prohibited from retaining overpayments arising

from their submission of bills and/or receipt of payment to which they are not properly entitled.

*Id.* § 1.12-2.  Overpayments must be reported by MaineCare providers to Maine DHHS and

repaid.  *Id.* § 1.12-2.B.

31.     During the timeframe at issue in this action, Defendants knew that they were

prohibited from seeking and receiving reimbursement from MaineCare for services in violation

of the above laws, regulations, rules and requirements applicable to MaineCare.  During the

timeframe at issue in this action, compliance with the above laws, regulations, rules and

requirements applicable to MaineCare were material considerations and prerequisites to

reimbursement by MaineCare.

**B.**      **The Federal False Claims Act**

32.     The False Claims Act, at 31 U.S.C. § 3729(a)(1)(A), provides that a person is liable to the United States Government for three times the amount of damages which the Government sustains because of the act of that person, plus a civil penalty for each such claim, for each instance in which the person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."

33.     The False Claims Act, at 31 U.S.C. § 3729(a)(1)(B), provides that a person is liable to the United States Government for three times the amount of damages which the Government sustains because of the act of that person, plus a civil penalty for each such claim, for each instance in which the person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  Records and statements are material to a false or fraudulent claim where they have "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."  31 U.S.C. § 3729(b)(4).

34.     The False Claims Act, at 31 U.S.C. § 3729(a)(1)(G), provides that a person is liable to the United States Government for three times the amount of damages which the Government sustains because of the act of that person, plus a civil penalty for each such claim, for each instance in which the person "knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."

35.     The False Claims Act defines the term "knowingly" under 31 U.S.C. § 3729(b)(1)(B) to mean that a person, with respect to information, "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information."

36.     Pursuant to 31 U.S.C. § 3729(b)(1)(B), no proof of specific intent to defraud is required.

**C.     Maine Law Civil Liability of Persons Making False Claims**

37.     Maine law, 22 M.R.S.A. § 15, further provides that "[a]ny person, firm, association, partnership, corporation or other legal entity who makes or causes to be made or presents or causes to be presented for payment or approval any claim upon or against the department or upon any funds administered by the department, knowing such claim to be materially false, fictitious or fraudulent, or who knowingly makes any false written statement or knowingly submits any false document material to a false, fictitious or fraudulent claim or who knowingly enters into any agreement, combination or conspiracy to defraud the department by obtaining the payment or approval of any materially false, fictitious or fraudulent claim or who knowingly makes or causes to be made a false written statement or record material to an obligation to pay or transmit money or property to the department or knowingly conceals or knowingly and improperly materially avoids or materially decreases an obligation to pay or transmit money or property to the department is, in addition to any criminal liability that may be provided by law, subject to civil suit" and penalties.

38.     The Court, pursuant to 31 U.S.C. § 3732(b), has jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730 of Title 31.

## V.  Factual Background

**A.    NHHC Enters into a MaineCare/Medicaid Provider Agreement with Maine DHHS in March 2015**

39.    On March 26, 2015, NHHC entered into an agreement with Maine DHHS to participate as a provider in the MaineCare program (the "Provider Agreement").

40.    The Provider Agreement was executed on behalf of NHHC by Hassan, who identified himself on the signature page of the document as NHHC's "Administrator."

41.    In exchange for being granted the privilege of participating in MaineCare, NHHC agreed to comply with a variety of terms and conditions imposed under the Provider Agreement.

42.    For example, NHHC agreed to comply with the provisions of all Federal and State laws and regulations related to Medicaid, the Manual, and the Provider Agreement itself. NHHC's compliance with these conditions of participation was a material consideration to Maine DHHS reimbursing NHHC for services provided to MaineCare members.

43.    Defendants understood that Maine DHHS would only reimburse NHHC for MaineCare services provided to MaineCare members in accordance with the provisions of the Manual, and that reimbursement was contingent on the compliance of NHHC, its agents, and its employees with applicable federal and state laws, the Manual, and the Provider Agreement.

44.    Through the Provider Agreement, Defendants further understood and acknowledged that they would be jointly liable for any debts owed to Maine DHHS.

45.    The Provider Agreement obligated NHHC to report any moneys it received to which it was not entitled, and to refund promptly any such moneys to Maine DHHS.  NHHC was expressly liable for overpayment debts owed to Maine DHHS.  So, too, was any person who had an ownership or control interest in NHHC, as well as any officer, director or member of NHHC responsible for its control or any management of its funds or finances.

**B.**     **In February 2016, NHHC is Approved to Provide Targeted Case Management Services, Yet Lacks the Mental Health Agency License to Service and Bill for MaineCare Members with Mental Health Diagnoses**

46.     In early 2016, NHHC applied through Maine DHHS to become a provider of Targeted Case Management Services.

47.     On February 11, 2016, Maine DHHS representatives met with Hassan regarding NHHC's application.  The purpose of the meeting was to review NHHC's application to provide Targeted Case Management Services and to address any concerns or questions Hassan had regarding understanding the requirements of the program.

48.     At the meeting on February 11, 2016, the Maine DHHS representatives informed Hassan that, upon approval of NHHC's Targeted Case Management Services application, NHHC could only provide services to MaineCare members with developmental or intellectual disabilities, as opposed to those with a mental health diagnosis.

49.     On February 29, 2016, Maine DHHS provided Hassan with a letter informing him that NHHC had been approved to begin providing Targeted Case Management Services, as permitted by the Manual.

50.     After learning that NHHC intended to open a new office in Augusta, Maine DHHS representatives again met with Hassan, on April 15, 2016.

51.     At the meeting on April 15, 2016, Hassan informed the Maine DHHS representatives that he anticipated hiring personnel and taking on MaineCare members from a different Targeted Case Management Services provider in Augusta that was ceasing its operations.

52.     The Maine DHHS representatives knew that the Targeted Case Management Services provider in Augusta that was ceasing operations had previously provided services to MaineCare members with mental health diagnoses.  Accordingly, the Maine DHHS

representatives reiterated to Hassan that without holding a Mental Health Agency License, NHHC could only serve clients with developmental or intellectual disabilities.

53.     Separately, in May 2016, a Resource Coordinator of Maine DHHS Children's Behavioral Services also informed Hassan that a Mental Health Agency License was required to provide services to MaineCare members with mental health diagnoses.

54.     Hassan thereafter submitted an application for a Mental Health Agency License to the Division of Licensing and Regulatory Services – Behavioral Health of Maine DHHS.  The Division of Licensing and Regulatory Services – Behavioral Health received the application on May 23, 2016, and a week later assigned the application to a Staff Licensor.

55.     From May through September 2016, the Staff Licensor and Hassan communicated concerning NHHC's pending Mental Health Agency License application, primarily with regard to missing and/or incomplete information and documentation that prevented the application from being granted.

**C.     From May through September 2016, Defendants Knowingly Submit or Cause to be Submitted False Claims to MaineCare for Targeted Case Management Services to MaineCare Members with Mental Health Diagnoses**

56.     Despite not having been granted a Mental Health Agency License, NHHC improperly provided Targeted Case Management Services to individuals who had a mental health diagnosis.

57.     Knowing that Targeted Case Management Services could not be billed to or reimbursed by MaineCare for members with mental health diagnoses—as evidenced, in part, by the fact that NHHC had applied for the required Mental Health Agency License—Defendants thus defrauded MaineCare by seeking and receiving MaineCare funds for such non-reimbursable, unlicensed services for the period of time covering May 16 through September 7, 2016.

58.    Defendants' false claims include but are not limited to those concerning "Member

S.M.,"[1] a MaineCare member with a mental health diagnosis of post-traumatic stress disorder.

Member S.M. received Targeted Case Management Services from NHHC during the timeframe

at issue, for which NHHC sought and received reimbursement from MaineCare as follows

despite lacking the required Mental Health Agency License.

    a.    For nine (9) Targeted Case Management units of service provided on July

        26 and 27, 2016, NHHC sought reimbursement from MaineCare in the

        amount of $193.68 and was reimbursed by MaineCare in the amount of

        $193.68.

    b.    For six (6) Targeted Case Management units of service provided on

        August 3, 2016, NHHC sought reimbursement from MaineCare in the

        amount of $129.12 and was reimbursed by MaineCare in the amount of

        $129.12.

    c.    For eight (8) Targeted Case Management units of service provided on

        August 10, 2016, NHHC sought reimbursement from MaineCare in the

        amount of $172.16 and was reimbursed by MaineCare in the amount of

        $172.16.

    d.    For one (1) Targeted Case Management unit of service provided on

        August 16, 2016, NHHC sought reimbursement from MaineCare in the

        amount of $21.52 and was reimbursed by MaineCare in the amount of

        $21.52.

---

[1]    In order to preserve the confidentiality of the MaineCare members here they are referred to only by their initials and using gender-neutral terminology.

     e.     For two (2) Targeted Case Management units of service provided on August 18, 2016, NHHC sought reimbursement from MaineCare in the amount of $43.04 and was reimbursed by MaineCare in the amount of $43.04.

     f.     For one (1) Targeted Case Management unit of service provided on August 22, 2016, NHHC sought reimbursement from MaineCare in the amount of $21.52 and was reimbursed by MaineCare in the amount of $21.52.

     g.     For eight (8) Targeted Case Management units of service provided on August 24, 2016, NHHC sought reimbursement from MaineCare in the amount of $172.16 and was reimbursed by MaineCare in the amount of $172.16.

59.     Defendants' false claims include but are not limited to those concerning "Member J.L.," a MaineCare member with a mental health diagnosis of post-traumatic stress disorder. Member J.L. received Targeted Case Management Services from NHHC during the timeframe at issue, for which NHHC sought and received reimbursement from MaineCare as follows despite lacking the required Mental Health Agency License.

     a.     For eight (8) Targeted Case Management units of service provided on July 8, 2016, NHHC sought reimbursement from MaineCare in the amount of $172.16 and was reimbursed by MaineCare in the amount of $172.16.

     b.     For four (4) Targeted Case Management units of service provided on July 20, 2016, NHHC sought reimbursement from MaineCare in the amount of $86.08 and was reimbursed by MaineCare in the amount of $86.08.

13

c.      For nine (9) Targeted Case Management units of service provided on July 25, 2016, NHHC sought reimbursement from MaineCare in the amount of $193.68 and was reimbursed by MaineCare in the amount of $193.68.

d.      For six (6) Targeted Case Management units of service provided on August 2, 2016, NHHC sought reimbursement from MaineCare in the amount of $129.12 and was reimbursed by MaineCare in the amount of $129.12.

e.      For twenty (20) Targeted Case Management units of service provided on August 10, 2016, NHHC sought reimbursement from MaineCare in the amount of $430.40 and was reimbursed by MaineCare in the amount of $430.40.

f.      For six (6) Targeted Case Management units of service provided on August 15, 2016, NHHC sought reimbursement from MaineCare in the amount of $129.12 and was reimbursed by MaineCare in the amount of $129.12.

g.      For seven (7) Targeted Case Management units of service provided on August 23 and 24, 2016, NHHC sought reimbursement from MaineCare in the amount of $150.64 and was reimbursed by MaineCare in the amount of $150.64.

60.     Defendants' false claims include but are not limited to those concerning "Member E.D.," a MaineCare member with a mental health diagnosis of post-traumatic stress disorder. Member E.D. received Targeted Case Management Services from NHHC during the timeframe

14

at issue, for which NHHC sought and received reimbursement from MaineCare as follows despite lacking the required Mental Health Agency License.

    a.    For six (6) Targeted Case Management units of service provided on July 12, 2016, NHHC sought reimbursement from MaineCare in the amount of $129.12 and was reimbursed by MaineCare in the amount of $129.12.

    b.    For six (6) Targeted Case Management units of service provided on July 19, 2016, NHHC sought reimbursement from MaineCare in the amount of $129.12 and was reimbursed by MaineCare in the amount of $129.12.

    c.    For one (1) Targeted Case Management unit of service provided on July 26, 2016, NHHC sought reimbursement from MaineCare in the amount of $21.52 and was reimbursed by MaineCare in the amount of $21.52.

    d.    For ten (10) Targeted Case Management units of service provided on August 1, 2016, NHHC sought reimbursement from MaineCare in the amount of $215.20 and was reimbursed by MaineCare in the amount of $215.20.

    e.    For one (1) Targeted Case Management unit of service provided on August 18, 2016, NHHC sought reimbursement from MaineCare in the amount of $21.52 and was reimbursed by MaineCare in the amount of $21.52.

    f.    For two (2) Targeted Case Management units of service provided on September 1, 2016, NHHC sought reimbursement from MaineCare in the amount of $43.04 and was reimbursed by MaineCare in the amount of $43.04.

g.      For one (1) Targeted Case Management unit of service provided on September 6, 2016, NHHC sought reimbursement from MaineCare in the amount of $21.52 and was reimbursed by MaineCare in the amount of $21.52.

61.    Defendants' false claims include but are not limited to those concerning "Member K.A.," a MaineCare member with a mental health diagnosis of post-traumatic stress disorder. Member K.A. received Targeted Case Management Services from NHHC during the timeframe at issue, for which NHHC sought and received reimbursement from MaineCare as follows despite lacking the required Mental Health Agency License.

a.      For four (4) Targeted Case Management units of service provided on July 15, 2016, NHHC sought reimbursement from MaineCare in the amount of $86.08 and was reimbursed by MaineCare in the amount of $86.08.

b.      For one (1) Targeted Case Management unit of service provided on July 22, 2016, NHHC sought reimbursement from MaineCare in the amount of $21.52 and was reimbursed by MaineCare in the amount of $21.52.

c.      For four (4) Targeted Case Management units of service provided on August 5, 2016, NHHC sought reimbursement from MaineCare in the amount of $86.08 and was reimbursed by MaineCare in the amount of $86.08.

d.      For one (1) Targeted Case Management unit of service provided on August 12, 2016, NHHC sought reimbursement from MaineCare in the amount of $21.52 and was reimbursed by MaineCare in the amount of $21.52.

16

     e.     For four (4) Targeted Case Management units of service provided on August 17, 2016, NHHC sought reimbursement from MaineCare in the amount of $86.08 and was reimbursed by MaineCare in the amount of $86.08.

     f.     For two (2) Targeted Case Management units of service provided on August 22, 2016, NHHC sought reimbursement from MaineCare in the amount of $43.04 and was reimbursed by MaineCare in the amount of $43.04.

     g.     For four (4) Targeted Case Management units of service provided on September 6, 2016, NHHC sought reimbursement from MaineCare in the amount of $86.08 and was reimbursed by MaineCare in the amount of $86.08.

62.     In sum, the funds Defendants fraudulently sought and received from MaineCare from May 16 through September 7, 2016, totaled $55,600.23, comprising 45 distinct MaineCare members and 494 associated false claims.

**D.     Since September 2016, Defendants Have Improperly Retained all Overpayments Received Concerning the Improperly Billed Targeted Case Management Services**

63.     During the May through September 2016 timeframe, NHHC's Children's Targeted Case Management Program Supervisor repeatedly informed Hassan that NHHC needed to possess a Mental Health Agency License in order to service MaineCare members with mental health diagnoses.

64.     Finally, on September 12, 2016, NHHC's Children's Targeted Case Management Program Supervisor sent an email to the Staff Licensor at the Division of Licensing and

Regulatory Services – Behavioral Health who was assigned to NHHC's Mental Health Agency License application.

65.     In the email, NHHC's Children's Targeted Case Management Program Supervisor informed the Staff Licensor, "the Noble TCM program has been serving mental health clients for the last few months."

66.     On September 13, 2016, a Maine DHHS representative sent an email to Hassan reiterating that

> since Noble does not have a mental health license, your case managers may only serve clients with an Intellectual Disability (ID) or Developmental Disability (DD).  In order to serve clients with a mental health diagnosis, your agency must have a valid MH license issued by the Division of Licensing and Regulatory Services.

The email reiterated that NHHC could not bill MaineCare for Targeted Case Management Services to clients with a mental health diagnosis.

67.     On September 22, 2016, the Staff Licensor at the Division of Licensing and Regulatory Services – Behavioral Health made an unannounced visit to the Portland office of NHHC.

68.     During the unannounced visit on September 22, 2016, the Staff Licensor met with Hassan.  Hassan relayed that, at the direction of Maine DHHS, he had arranged for all Targeted Case Management clients with a mental health diagnosis to be discharged, letters sent, alternate service providers identified, and transitions facilitated.

69.     During the unannounced visit on September 22, 2016, Hassan admitted to the Staff Licensor that he knew he had to pay MaineCare back for the services NHHC had provided without a license.  Hassan told the Staff Licensor that the MaineCare funds NHHC had received for the improperly billed Targeted Case Management Services to clients with a mental health diagnosis would be repaid.

70.     NHHC's pending Mental Health Agency License application was denied by the Division of Licensing and Regulatory Services – Behavioral Health on November 17, 2016.

71.     On January 3, 2017, Maine DHHS' MaineCare Services office demanded that NHHC reverse all claims for services billed for its Targeted Case Management mental health clients, including claims billed for interpreter services provided for the non-covered services.

72.     Despite Defendants' acknowledgment of their repayment obligation and the demands for repayment made by Maine DHHS, Defendants continue to retain and have not returned to MaineCare the $55,600.23 in overpayments received.

*        *        *        *        *

73.     Defendants accordingly defrauded MaineCare by seeking, receiving, and improperly retaining MaineCare funds for non-reimbursable Targeted Case Management mental health services provided to MaineCare members.

## Count I: Presenting False or Fraudulent Claims

(United States; 31 U.S.C. §§ 3729(a)(1)(A), 3730(a))

74.     Paragraphs 1 through 73 are realleged as though fully set forth herein.

75.     Defendants, by and through their requests for payment or causing requests for payment, knowingly submitted or caused to be submitted false or fraudulent MaineCare claims for payment or approval in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), and thereafter received payments on such false or fraudulent claims.

76.     Because of Defendants' acts, the United States sustained damages in an amount to be determined at trial, and therefore is entitled to treble damages under the False Claims Act, plus civil penalties for each violation.

## Count II: Reverse False Claims

(United States; 31 U.S.C. §§ 3729(a)(1)(G), 3730(a))

77.     Paragraphs 1 through 76 are realleged as though fully set forth herein.

78.     Defendants knowingly concealed, avoided, or decreased an obligation to pay or transmit money to the United States, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G) and (b)(3), by improperly avoiding or decreasing their obligation to pay or transmit money back to MaineCare for the overpayments received.

79.     The MaineCare Provider Agreement for NHHC required it to report any monies received in excess of the amount to which it was entitled from the MaineCare program and refund promptly such moneys to the Maine DHHS.

80.     Hassan, as owner and operator of NHHC, knew that his business had overbilled MaineCare and retained such overpayments, and admitted so, in sum and substance.

81.     Pursuant to the MaineCare Provider Agreement for NHHC, liability for such overpayment debts is enforceable against not only NHHC, but also any person who had an ownership or control interest in NHHC, including Hassan.

82.     Because of Defendants' acts, the United States sustained damages in an amount to be determined at trial, and therefore is entitled to treble damages under the False Claims Act, plus civil penalties for each violation.

## Count III: Maine Law Civil Liability of Persons Making False Claims

(Maine; 22 M.R.S.A. § 15)

83.     Paragraphs 1 through 82 are realleged as though fully set forth herein.

84.     Defendants made or caused to be made or presented or caused to be presented for payment or approval claims upon or against Maine DHHS or upon funds administered by Maine

DHHS, knowing such claims to be materially false, fictitious or fraudulent, or knowingly made false written statements or knowingly submitted false documents material to false, fictitious or fraudulent claims or knowingly entered into an agreement, combination or conspiracy to defraud Maine DHHS by obtaining the payment or approval of any materially false, fictitious or fraudulent claim or knowingly made or caused to be made false written statements or records material to an obligation to pay or transmit money or property to Maine DHHS or knowingly concealed or knowingly and improperly materially avoided or materially decreased an obligation to pay or transmit money or property to Maine DHHS, in violation of 22 M.R.S.A. § 15.

85.     Because of Defendants' acts, Maine sustained damages in an amount to be determined at trial, and therefore is entitled to threefold damages under 22 M.R.S.A. § 15, plus civil penalties of not less than $2,000 for each violation.

## Count IV: Unjust Enrichment

(United States & Maine; Common Law)

86.     Paragraphs 1 through 85 are realleged as though fully set forth herein.

87.     Defendants were unjustly enriched through the payments they received from Plaintiffs' funds.  The circumstances of Defendants' receipt of those payments are such that, in equity, Defendants are liable to account for and pay such amounts, which are to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs the United States and Maine request that judgment be entered in their favor and against Defendants as follows:

A.      On Counts I and II (Violations of 31 U.S.C. § 3729(a)(1)(A) and (G)), for treble the United States' damages, in an amount to be determined at trial, plus civil penalties for each false claim presented, together with all such relief as may be just and proper;

B.      On Count III (Violations of 22 M.R.S.A. § 15), for threefold Maine's damages, in an amount to be determined at trial, plus civil penalties for each false claim presented, together with all such relief as may be just and proper;

C.      On Counts I through III, for an award of fees and costs pursuant to 31 U.S.C. § 3729 and 22 M.R.S.A. § 15;

D.      On Count IV (Unjust Enrichment), for an accounting and for the amounts by which Defendants were unjustly enriched, in an amount to be determined at trial, together with costs and interest; and

E.      All other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

The United States and Maine demand a jury trial in this case pursuant to Federal Rule of

Civil Procedure 38(b) of all claims and issues so triable.

Dated: June 10, 2020                          Respectfully submitted,
      Bangor, Maine
                                    HALSEY B. FRANK
                                    United States Attorney

                                    /s/ Andrew K. Lizotte
                                    Andrew K. Lizotte
                                    Assistant U.S. Attorney
                                    202 Harlow Street
                                    Bangor, Maine 04401
                                    (207) 262-4636
                                    Andrew.Lizotte@usdoj.gov

Dated: June 10, 2020                          AARON M. FREY
      Augusta, Maine                        Attorney General for the State of Maine

                                    /s/ William R. Savage
                                    William R. Savage
                                    Assistant Attorney General
                                    Director, Healthcare Crimes Unit
                                    6 State House Station
                                    Augusta, ME 04333
                                    (207) 626-8804
                                    William.Savage@maine.gov